**A–1 AMUSEMENT CO., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 98–192 C.**

United States Court of Federal Claims.

Oct. 19, 2000.

Douglas B. McFadden, Washington, DC, for plaintiffs. John M. Shoreman, of counsel.

Mark A. Melnick, with whom were David W. Ogden, Assistant Attorney General, David M. Cohen, Director, and Katherine M. Kelly, of counsel, Department of Justice, Washington, DC, for defendant. Margaret J. Porter, Chief Counsel, and Karen E. Schifter, Associate Chief Counsel, Food and Drug Administration, and Karen Wagner, Department of Health and Human Services, of counsel.

*OPINION AND ORDER*

HEWITT, Judge.

Plaintiffs own and operate cigarette vending machine businesses. They have filed a complaint against the United States alleging that certain regulations promulgated by the Food and Drug Administration (FDA or agency or government) effected a temporary taking of their businesses.[1] The matter is now before the court on Defendant's Partial Motion to Dismiss (Def.'s Mot.). In accor-

---

1. There are 412 named plaintiffs in this case. *See* Plaintiffs' Motion for Leave to File a Notice of Additional Plaintiffs dated May 15, 1998.

dance with this court's Order of May 23, 2000, the parties have designated Tuscaloosa Vending Company as the test case plaintiff for the purpose of this motion.[2] For the following reasons, defendant's motion is GRANTED.

## I. Background

Plaintiff, Tuscaloosa Vending Company, is owner and operator of a cigarette vending machine business. Amended Complaint (Compl.) ¶ 2. Plaintiff has placed its cigarette vending machines in public locations in the state of Alabama pursuant to placement contracts with the location owners. *Id.* Plaintiff derives revenue from the public sale of cigarettes from the vending machines and from commissions paid by various cigarette manufacturers for stocking particular brands in the machines. *Id.*

On August 11, 1995, FDA asserted jurisdiction over cigarettes and smokeless tobacco under the drug and device provision of the Federal Food, Drug and Cosmetics Act (FDCA), 21 U.S.C. §§ 301–397 (1938). *Id.* ¶ 7. The agency proposed broad regulations concerning the sale of cigarettes and smokeless tobacco to children and adolescents. *Id.* The proposed regulations included a ban on the sale of cigarettes through vending machines. *Id.*

On August 28, 1996, FDA issued final "Regulations Restricting the Sale and Distribution of Cigarette and Smokeless Tobacco to Protect Children and Adolescents." *Id.* ¶ 8. The final regulations imposed access restrictions on tobacco products that included a prohibition of cigarette sales to minors through vending machines.[3] *Id.* ¶¶ 8, 16.

With respect to the regulatory provision permitting vending machine sales, in particular § 869(c)(2)(ii) of the final regulations, the agency stated:

> FDA emphasizes that this narrowly drawn exemption accommodates adults only in locations where young people, in fact, have no access at any time. . . . A vending machine would not be permitted in a facility that employs only adults but also permits employees to bring children to work. The agency further emphasizes that it is the exempt establishment[']s responsibility to ensure that no one under 18 is present, or permitted to enter the premises, at any time.

*Id.* ¶ 9 (quoting 61 Fed.Reg. at 44450 (August 28, 1996)). Plaintiff complains that the agency's narrow interpretation of this subsection of the final regulations, which imposed stringent "access restrictions," effectively required the removal of cigarette vending machines from all public locations, *Id.* ¶¶ 9, 16, and deprived it of "all economically viable

---

**2.** This case was stayed by Order of May 14, 1998 pending the Supreme Court's decision in *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). After issuance of the *Brown & Williamson* opinion on March 21, 2000, this court lifted the stay in this action. *See* Order dated April 11, 2000. In light of the *Brown & Williamson* decision, plaintiffs filed a two count Amended Complaint on May 10, 2000. By Order of May 23, 2000, the court stayed the proceeding with respect to Count II of the Amended Complaint pending disposition of *B & G Enterprises v. United States*, 43 Fed.Cl. 523 (1999), *appeal docketed*, No. 99–5114 (Fed. Cir. June 24, 1999), and directed the parties to designate a test case plaintiff for further proceedings with respect to the temporary taking issue, Count I of the Amended Complaint. The court's May 23, 2000 Order directed that the test case plaintiff be "a single entity located and doing business exclusively in geographical areas not subject to state or local restrictions on cigarette vending." By Status Report filed June 16, 2000, the parties identified Tuscaloosa Vending

Company of Tuscaloosa, Alabama as the test case plaintiff.

**3.** The agency regulations which addressed, in pertinent part, vending machines, self-service displays, mail-order sales, and other "impersonal" modes of sale provided:

> (1) Except as otherwise provided under this section, a retailer may sell cigarettes and smokeless tobacco only in a direct, face to face exchange between retailer and the consumer. Examples of methods of sale that are not permitted include vending machines and self-service displays;
>
> (2) Exceptions. The following methods of sale are permitted;
>
> (i) Mail-order sales, excluding mail-order redemption of coupons and distribution of free samples through the mail;
>
> (ii) Vending machines (including vending machines that sell packages, single cigarettes) and self-service displays that are located in facilities where retailer ensures that no person younger than 18 years of age is present, or permitted to enter, at any time.

Compl. at ¶ 8 (quoting 21 C.F.R. § 869(c)).

uses of [its] cigarette vending machines and [the attendant] placement contracts." *Id.* ¶ 15.

In 1995, a group of tobacco manufacturers, retailers, and advertisers filed suit in the United States District Court for the Middle District of North Carolina challenging the validity of the FDA's proposed regulatory program to restrict minors' access to cigarettes and smokeless tobacco. *Coyne Beahm, Inc. v. FDA*, 966 F.Supp. 1374 (M.D.N.C.1997). On summary judgment motion, the district court upheld the validity of the FDA's access and labeling restrictions.[4] *See Coyne Beahm*, 966 F.Supp. at 1400. The Court of Appeals reversed the district court's decision in *Brown & Williamson Tobacco Corp. v. FDA*, 153 F.3d 155, 176 (4th Cir. 1998), holding that Congress has not granted the FDA jurisdiction to regulate tobacco products. Subsequently, on petition for certiorari, the Supreme Court affirmed the appellate court's decision, concluding that the FDA lacked authority under the FDCA to promulgate regulations concerning tobacco products as customarily marketed. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161–63, 120 S.Ct. 1291, 1316, 146 L.Ed.2d 121 (2000).

Based on the Supreme Court's holding in *Brown & Williamson*, defendant now moves to dismiss plaintiff's complaint pursuant to Rule 12(b)(4) of the Court of Federal Claims (RCFC).

## II. Discussion

### A. Rule 12(b)(4)

Rule 12(b)(4) provides for the dismissal of a claim based on the "failure to state a claim upon which relief can be granted." RCFC 12(b)(4). When considering a motion to dismiss under Rule 12(b)(4), the court must follow " 'the accepted rule that a complaint should not be dismissed ... unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Integrated Logistics Support Sys. Int'l., Inc. v. United States*, 42 Fed.Cl. 30, 33 (1998)(quoting *Con-*

*ley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court must accept the factual allegations in the plaintiff's complaint as true, construing the complaint broadly and drawing all inferences in favor of the plaintiff. *Ponder v. United States*, 117 F.3d 549, 552–53 (1997), *cert. den.*, 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998). Dismissal by the court under 12(b)(4) constitutes an adjudication on the merits of a claim. *See Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed.Cir.1995).

### B. Count I of Plaintiff's Amended Complaint

In Count I of its amended complaint, plaintiff alleges a temporary taking of its cigarette vending machine business. Compl. ¶¶ 19–23. Plaintiff specifically complains that the FDA effected a regulatory taking by enacting regulations "that so severely restricted the location of cigarette vending machines as to eliminate [plaintiff's] placement contracts." Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss (Pls.' Opp.) at 3. Plaintiff seeks compensation for those placement contracts which it alleges were abrogated during the period between the issuance of FDA's notice of proposed rulemaking and the Supreme Court's determination that the FDA's regulations were invalid. *Id.* at 5.

■ The Fifth Amendment of the United States Constitution bars the government from taking private property for public use without paying just compensation. U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation"). To obtain just compensation, a plaintiff alleging a taking of its property may bring suit against the government in the United States Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984).

■ The law is well-settled that "[a] compensable taking only arises if the government action in question is authorized." *Del–Rio Drilling Programs Inc. v. United States*, 146 F.3d 1358, 1362 (Fed.Cir.1998) (citing *United*

---

**4.** At the same time, the district court held that the agency's advertising and promotion restric- tions exceeded its authority under the FDCA. *Coyne Beahm,* 966 F.Supp. at 1400.

*States v. North Am. Transp. & Trading Co.*, 253 U.S. 330, 333, 40 S.Ct. 518, 64 L.Ed. 935 (1920)). *See also Regional Rail Reorganization Act Cases*, 419 U.S. 102, 126–27 n. 16, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)(a compensable taking contemplates that the governmental action is authorized); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed.Cir. 1993)(a taking claim turns on the validity of the government action); *Southern Cal. Fin. Corp. v. United States*, 225 Ct.Cl. 104, 634 F.2d 521, 523 (1980), *cert. denied*, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981) ("before a compensable taking can be found by the court, there must be some congressional authorization, express or implied, for the particular taking claimed"). A Tucker Act suit does not lie for an unauthorized executive taking. *Florida Rock Indus., Inc. v. United States*, 791 F.2d 893, 898 (Fed.Cir. 1986), *cert. denied*, 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987) (suit in the Court of Federal Claims "is not ... available to recover damages for unauthorized acts of government officials"); *NBH Land Co. v. United States*, 217 Ct.Cl. 41, 576 F.2d 317, 319 (1978) (no Tucker Act suit if taking "not authorized by Congress, expressly or by implication").

With respect to the government action in this case, the Supreme Court has stated, "[I]t is plain that Congress has not given the FDA the authority that it seeks to exercise here." *Brown & Williamson*, 120 S.Ct. at 1316. Upon review of the regulatory program of the Federal Food, Drug and Cosmetic Act (FDCA) and subsequent tobacco legislation, the Supreme Court determined in *Brown & Williamson* "that Congress has directly spoken to the question at issue and precluded the FDA from regulating tobacco products." *Id.* at 1301.

Defendant urges that the Supreme Court's holding in *Brown & Williamson* precludes this suit. Def.'s Mot. at 28. Plaintiff asserts, however, that it may bring suit for a temporary taking under the principles regarding government authority set forth in *Del–Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed.Cir.1998). Pls.' Opp. at 7–9.

In *Del–Rio Drilling*, the Federal Circuit stated:

In a case ... in which the alleged taking consists of regulatory action that deprives a property-holder of the enjoyment of property, government agents have the requisite authorization if they act within the general scope of their duties, *i.e.*, if their actions are a "natural consequence of Congressionally approved measures," *NBH Land Co. v. United States*, 217 Ct.Cl. 41, 576 F.2d 317, 319 (1978), or are pursuant to "the good faith implementation of a Congressional Act," *Southern Cal. Fin. Corp. v. United States*, 225 Ct.Cl. 104, 634 F.2d 521, 525 (1980).

146 F.3d at 1362. But, the Federal Circuit cautioned, "[W]hen a government official engages in *ultra vires* conduct, the official 'will not, in any legal or constitutional sense, represent the United States, and what he does or omits to do, without the authority of Congress, cannot create a claim against the government "founded upon the Constitution." ' " *Id.* (quoting *Hooe v. United States*, 218 U.S. 322, 335, 46 Ct.Cl. 655, 31 S.Ct. 85, 54 L.Ed. 1055 (1910)).

Here, plaintiff contends, "The issue is not that the FDA lacked authority, but rather if it exceeded that authority." Pls.' Opp. at 7. Plaintiff argues that "[e]ven though the Supreme Court ultimately held the FDA Regulations invalid[,] the Amended Complaint states a claim for relief since the government actions adopting the regulations were taken in good faith and were within the general regulatory capacity of the FDA." *Id.* at 6–7. Plaintiff asserts that the FDA did not act illegally but "simply exceeded its authority under the FDCA." *Id.* at 9. Accordingly, plaintiff reasons, "This case fits squarely within *Del Rio*." *Id.* Plaintiff's argument, however, misapprehends the Federal Circuit's holding in *Del–Rio Drilling*.

The *Del–Rio Drilling* case arose out of a denial by Interior Department officials of drilling permits to the holders of mineral leases on Indian tribal lands because the tribe had not approved rights-of-way over the land. *Del–Rio Drilling*, 146 F.3d at 1360–61. Plaintiffs filed suit in the Court of Federal Claims alleging breach of contract

or, alternatively, the taking of their leases. *Id.* at 1361. The trial court dismissed plaintiffs' takings claim on the ground that plaintiffs refused to concede the validity of the government's actions in denying the permits, stating that "a person claiming that his property was taken 'must be prepared to allege that the Government is not acting in violation of any law other than the failure to pay compensation called for by the Fifth Amendment.'" *Id.* (quoting *Del–Rio Drilling Programs, Inc. v. United States*, 37 Fed.Cl. 157, 161 (1997)).

On appeal, the Federal Circuit found that "the officials of the Interior Department who denied a permit to [plaintiffs] had 'the authority to regulate the proposed mining.'... The issue of authorization is therefore no impediment to [plaintiffs'] takings claim." *Id.* at 1363 (citation omitted). In its discussion of the issue of governmental authorization, the Federal Circuit then explained that certain conduct that can be characterized as "invalid" or "illegal" (and therefore "unauthorized") could, nonetheless, support a takings claim:

> While this court has on occasion referred to "invalid" or "illegal" government conduct as "unauthorized" for purposes of determining whether the conduct may give rise to Tucker Act liability, *see Short v. United States*, 50 F.3d 994, 1000 (Fed.Cir. 1995); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed.Cir.1993), we understand those references to require a showing that the conduct was *ultra vires*, *i.e.*, it was either explicitly prohibited or was outside the normal scope of the government officials' duties. Neither the Supreme Court nor this court has held that government conduct is "unauthorized," for purposes of takings law, merely because the conduct would have been found legally erroneous if it had been challenged in court. *See United States v. Great Falls Mfg. Co.*, 112 U.S. 645, 656, 20 Ct.Cl. 522, 5 S.Ct. 306, 28 L.Ed. 846 (1884) (even if government officials' conduct could have been enjoined, claimant was entitled to treat the action as a taking and demand just compensation); *Eyherabide v. United States*, 170 Ct.Cl. 598, 345 F.2d 565, 570 (1965) (government officials' conduct "cannot be characterized as unauthorized merely because they may have been mistaken, imprudent, or wrongful"). Accordingly, a court's conclusion that government agents acted unlawfully does not defeat a Tucker Act takings claim if the elements of a taking are otherwise satisfied.

146 F.3d at 1363.

■ In examining the distinction between unauthorized conduct and conduct which is authorized but nonetheless unlawful, the Federal Circuit considered the guidance provided by the Supreme Court in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). *Id.* at 1362. In *Larson*, the Supreme Court observed that "if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law." *Larson*, 337 U.S. at 695, 69 S.Ct. 1457. In *Del–Rio Drilling*, the Federal Circuit explained why certain legally flawed government action does not preclude absolutely a takings claim:

> [I]f the government has taken property and has done so in a legally improper manner, it has committed two violations of the property-owner's rights. The two separate wrongs give rise to two separate causes of action, and the property-owner may elect to sue for just compensation or to seek relief for the legal improprieties committed in the course of the taking.

*Del–Rio Drilling*, 146 F.3d at 1363–64 (citing *First English Evangelical Lutheran Church v. County of L.A.*, 482 U.S. 304, 319–22, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)). At the same time, the Federal Circuit made clear that a takings claim for just compensation must be predicated upon government conduct that is within the scope of statutory authorization. *Del–Rio Drilling*, 146 F.3d at 1363 (government action that is "*ultra vires, i.e.*, ... either explicitly prohibited or ... outside the normal scope of the government officials' duties" does not give rise to a taking).

■ Plaintiff in this case does not dispute that FDA's action was unauthorized. *See* Pls.' Opp. at 6–7. Plaintiff's argument is that

the agency's conduct was unauthorized but lawful and thus gives rise to a takings claim under the standard enunciated in *Del–Rio Drilling. See id.* at 9.

Plaintiff's position is untenable. The Supreme Court has determined that FDA lacked the authority to promulgate the regulations at issue. *Brown & Williamson,* 120 S.Ct. at 1316. Government action which exceeds "valid statutory authority" cannot give rise to a taking claim. *Larson,* 337 U.S. at 695, 69 S.Ct. 1457. *See also Regional Rail Reorganization Act Cases,* 419 U.S. at 126–27 n. 16, 95 S.Ct. 335; *Tabb Lakes, Ltd. v. United States,* 10 F.3d at 802; *Southern Cal. Fin. Corp. v. United States,* 634 F.2d at 523. Accordingly, the court finds that plaintiff has failed to state a claim upon which relief can be granted.[5]

### III. Conclusion

For the foregoing reasons, the Partial Motion of the United States to Dismiss is GRANTED. The court ORDERS the following:

(1) Because there is no just reason for delay, the Clerk of the Court shall enter final judgment for defendant as to Count I of the Amended Complaint pursuant to RCFC 54(b). Each party shall bear its own costs.

(2) Proceedings as to Count II of the Amended Complaint shall continue to be stayed pursuant to this court's Order of May 23, 2000.

IT IS SO ORDERED.

---

**5.** In its Partial Motion to Dismiss, defendant alternatively argues that plaintiff's complaint should be dismissed on the grounds that (1) no taking occurred because the final regulations were never implemented, and (2) no taking occurred because the regulations did not interfere with the reasonable investment-backed expectations of plaintiff. Def.'s Mot. at 37–61. In urging these grounds for dismissal, defendant relies, in part, "upon matters outside the pleading [of plaintiff's complaint]." *See* RCFC 12(b). Because the court finds the FDA's lack of authority dispositive, the court does not reach defendant's other arguments.